**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
CHARLOTTE **DIVISION**
**CIVIL ACTION NO.** 3:13-CV-00574-GCM

| | |
|---|---|
| JESUS RAYA TORRES, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| ADM MILLING CO. ) | |
| CICA, INC. ) | |
| BUILDERS MUTUAL INSURANCE CO., ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**THIS MATTER** is before the Court on cross motions for summary judgment. This action originated as a claim by Plaintiff Jesus Raya Torres against Defendant ADM Milling Co. ("ADM Milling"). (Doc. No. 1) Torres alleged that, while he was employed as an independent contractor at ADM Milling's facility, the company's negligence caused him to sustain serious injuries on a piece of machinery. (Doc. No. 1) On October 31, 2013, ADM Milling filed a third party complaint against Torres's employer, CICA, Inc ("CICA"), alleging that the company was responsible for the settlement amount. (Doc. No. 5) ADM Milling filed an amended third party complaint on March 3, 2014, adding similar claims against CICA's insurer, Builders Mutual Insurance Company ("Builders Mutual"). (Doc. No. 18) On January 20, 2015, ADM Milling filed a second amended third party complaint alleging additional claims against Builders Mutual. (Doc. No. 35) In the interim, ADM Milling reached a settlement with Torres, and he dismissed his claims with prejudice. (Doc. No. 25)

On August 14, 2015, ADM Milling filed a Motion for Summary Judgment (Doc. No. 65) and Memorandum in Support (Doc. No. 66), arguing that it was entitled to summary judgment on

its claim against CICA. On August 31, 2015, CICA filed a Response in Opposition (Doc. No. 70), as well as its own Motion for Summary Judgment (Doc. No. 71) and Memorandum in Response (Doc. No. 72). That same day, Builders Mutual filed a Motion for Summary Judgment (Doc. No. 67) and Memorandum in Support (Doc. No. 68).

On September 17, 2015 ADM Milling filed a Reply (Doc. No. 75), a Response in Opposition to CICA's Motion (Doc. No. 78), a Response in Opposition to Builders Mutual's Motion (Doc. No. 79), and two affidavits in opposition to the motions (Doc. No. 76, 77). CICA filed its Reply on September 28, 2015 (Doc. No. 81), as did Builders Mutual (Doc. No. 81). For the following reasons, CICA and Builders Mutual's Motions will be **GRANTED**, and ADM Milling's Motion will be **DENIED.**

## I. BACKGROUND

ADM Milling operates a mill in Charlotte, North Carolina, and in 2011, it hired CICA, a commercial painting company, to scrape and paint portions of the mill's interior. On April 3, 2012, Jesus Raya Torres, a CICA employee, was injured on the job when his head became caught in a piece of equipment known as the man-lift. Torres was discovered in the machine, which is used to move employees between floors, with his head stuck between a step and a platform. (Simpson Depo. at 33, Doc. No. 66-5; Worker's Compensation Settlement Agreement at 2, Doc. No. 70-3) Torres does not recall the accident, and apparently there were no witnesses. (Torres Depo. at 25, Doc. No. 66-6)

Torres filed a claim against CICA under North Carolina's Worker's Compensation Act, and the parties reached a settlement on September 19, 2013. (Workers Compensation Settlement at 17, Doc. No. 70-3) Pursuant to the settlement agreement, CICA agreed to pay Torres a lump sum of $90,000, temporary disability benefits of $22,237.02, and medical expenses of

$164,273.07, in exchange for release from all liability for his injuries. (Workers Compensation Settlement at 11-12, Doc. No. 70-3)

In the same month that his settlement with CICA was finalized, Torres filed suit against ADM Milling in the Superior Court of Mecklenburg County, alleging: (1) negligence; (2) negligence per se; and (3) violations of North Carolina's Occupational Safety and Health Act ("OSHA"). (Doc. No. 1-1) By the time that Torres filed suit, ADM Milling had already retained counsel. Counsel wrote a letter to CICA on July 18, 2013, invoking a contract the parties had entered into, referred to as the Contractor's Agreement. (Doc. No. 66-2) The Agreement provided that CICA would (1) obtain comprehensive commercial general liability insurance that insured ADM Milling for bodily injury and property damage in the amount of $5 million; and (2) indemnify and defend ADM from and against claims arising from CICA's work on the premises.[1] (Doc. No. 66-2; Contractor's Agreement at 3-4, 5, Doc. No. 66-1) Pursuant to these terms, counsel requested that CICA provide a defense against Torres's claims and agree to indemnify ADM Milling for any losses, damages, or other costs. (Doc. No. 66-2)

On October 9, 2013, CICA's insurer, Builders Mutual, responded to ADM Milling's demand letter. (Doc. No. 35-8) Builders Mutual stated that it would defend ADM Milling under a Reservation of Rights. (*Id.*) Builders Mutual only committed to pay half of the settlement and defense costs, because it assumed ADM had its own commercial general liability policy, and that that insurer was partially responsible for the costs. (*Id.*) After ADM Milling notified Builders

---

[1] The parties dispute whether or not the terms of the operative provision required CICA to indemnify ADM Milling for claims arising out of ADM Milling's *own* negligence—as opposed to CICA's negligence—which would render the contract at least partially invalid under North Carolina law. (CICA Memorandum in Support at 6-10, Doc. No. 72; ADM Milling Memorandum in Support at 6-8, Doc. No. 66) They also disagree about when the Agreement was signed, with ADM Milling arguing that it was signed prior to Torres's accident and CICA maintaining that it was not signed until afterward. (CICA Memorandum in Support at 5, Doc. No. 72; ADM Milling Memorandum in Support at 5, Doc. No. 66)

Mutual that it was "self-insured," Builders Mutual agreed to pay all reasonable defense costs in an amended Reservation of Rights letter. (Doc. No. 35-9)

On April 22, 2014, all parties attended a mediated settlement conference. (Doc. No. 24) Torres agreed to dismiss his claims against ADM Milling in exchange for $135,000. Builders Mutual paid the attorneys' fees that ADM Milling incurred to defend against the claim. (ADM Milling Motion in Support at 8 n.3, Doc. No. 66) ADM Milling's insurer, Agrinational, paid the settlement amount.[2] (Farr Depo. at 10-15, Doc. No. 67-2) Both Agrinational and ADM Milling are wholly owned subsidiaries of the same parent company, Archer Daniels Midland. (Farr Depo. at 8-9, 11, Doc. No. 67-2) Agrinational serves as a captive insurance company for Archer Daniels Midland, meaning it was created to provide insurance coverage for the parent corporation's various subsidiaries. (Farr Depo. at 11, Doc. No. 67-2) However, Agrinational is apparently not a licensed insurance company authorized to conduct business in the state of North Carolina.[3] (N.C. Dep't of Insurance Database Search Results, Doc. No. 67-7)

Because Torres has settled all of his claims against ADM Milling, the only remaining claims before this Court are ADM Milling's claims against CICA and Builders Mutual. ADM Milling's Second Amended Third Party Complaint alleges the following claims: (1) breach of contract against CICA (Count I); (2) breach of contract against Builders Mutual (Count II); (3) declaratory judgment against Builders Mutual (Count III); (4) bad faith breach of contract against Builders Mutual (Count IV); and (5) unfair or deceptive trade practices, in violation of N.C. Gen Stat. § 75-1.1, *et seq.*, against Builders Mutual (Count V). (Doc. No. 35) CICA and

---

[2] Builders Mutual argues that ADM Milling intentionally concealed Agrinational's involvement in the settlement from the other parties until discovery, noting that neither the Amended Third Party Complaint nor the Second Amended Third Party Complaint make reference to the insurance company. (Builders Mutual Memorandum in Support at 10, Doc. No. 68)

[3] ADM Milling has not contested this fact.

Builders Mutual have moved for summary judgment on all claims; ADM Milling opposes their motions and argues that it is entitled to summary judgment on its claim against CICA. This matter is now ripe for disposition.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a scintilla of evidence" in support of the non-movant's position is not sufficient to establish a genuine dispute. *Id.* at 252. A material fact affects the outcome of the suit under the applicable substantive law. *See id.* at 248. When determining whether a dispute is genuine or a fact is material, courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Unsupported speculation, however, is insufficient to defeat a motion for summary judgment. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996).

## III. ANALYSIS

### A. Breach of contract, bad faith breach of contract, and declaratory judgment

Both CICA and Builders Mutual argue that they are entitled to summary judgment on several counts because ADM Milling is not the real party in interest for those claims. They contend that ADM Milling cannot show that it has a legal interest in any amount associated with the Torres settlement, because the $135,000 payment was fully covered by Agrinational. (Farr Depo. at 10-15, Doc. No. 67-2) CICA and Builders Mutual argue that Agrinational's payment of

the settlement amount rendered it the real party in interest as to all claims to recover those funds. (CICA Memorandum in Support at 12-13, Doc. No. 72; Builders Mutual Memorandum in Support at 10-11, Doc. No. 68). Thus, the Court will begin by determining whether ADM Milling is the real party in interest as to its claims for breach of contract, bad faith breach of contract, and declaratory judgment.

Rule 17(a) of the Federal Rules of Civil Procedure provides that "[a]n action must be prosecuted in the name of the real party in interest." "The meaning and object of the real party in interest principle embodied in Rule 17 is that the action must be brought by a person who possesses the right to enforce the claim and who has a significant interest in the litigation." *Va. Elec. & Power Co. v. Westinghouse Elec. Corp.*, 485 F.2d 78, 83 (4th Cir. 1973). In a diversity case, the Court determines whether a plaintiff is the real party in interest by reference to the applicable substantive law, which in this case is the law of North Carolina. *See id.*

As the North Carolina Supreme Court has explained, when an insurer covers a claim in full, it is the real party in interest in an action to enforce its right to recoup that amount.[4] *Burgess v. Trevathan*, 72 S.E.2d 231, 233 (N.C. 1952); *Land v. Tall House Bldg. Co.*, 563 S.E.2d 8, 11 (N.C. Ct. App. 2002). Explaining its rationale, the Court reasoned that "because the insurance company in such case is entitled to the entire fruits of the action," it "must be regarded as the real party in interest." *Burgess*, 72 S.E.2d at 233. Relying on this principle, North Carolina courts have held in subsequent cases that an insured ceases to be the real party in interest when disputed settlement funds have been paid entirely by its insurer. *See, e.g.*, *Land*, 563 S.E.2d at 10.

---

[4] The same rule applies, as a general matter, when federal substantive law determines the real party in interest. 6A Fed. Prac. & Proc. Civ. § 1546 (3d ed.) ("[I]f the insurer has paid the entire claim, it is the real party in interest and must sue in its own name.").

There are, of course, well-settled exceptions to this rule. For example, when the insurer covers only part of the claim, the insured and insurer are both parties in interest. *Burgess*, 72 S.E.2d at 233. Additionally, as a general matter, a right holder can assign its right to an assignee, enabling the assignee sue to enforce the right as the real party in interest. *See Va. Elec. & Power Co.*, 485 F.2d at 84. Here, however, ADM Milling has not argued that any of these exceptions apply. Rather, it asserts only that it is the real party in interest because it shares a parent company with Agrinational. (ADM Milling Response in Opposition at 3, Doc. No. 79; ADM Milling Response in Opposition at 6-8, Doc. No. 6-7) ADM Milling cites no caselaw in support of this argument, but insists that "[c]ompany internal accounting for [Archer Daniels Midland] and its subsidiaries, including ADM Milling and Agrinational, are carried through the corporate books." (ADM Milling Response in Opposition at 3, Doc. No. 79)

What ADM Milling fails to identify, however, is a legal principle that would allow the Court to treat two entirely separate, wholly owned subsidiaries of the same parent company as the same entity for purposes of determining the real party in interest to this case. ADM Milling essentially argues that the Court should engage in reverse piercing of the corporate form that Archer Daniels Midland adopted in order to secure particular benefits. *See Health Mgmt. Assocs. v. Yerby*, 715 S.E.2d 513, 516-17 (N.C. Ct. App. 2011). As the North Carolina courts have noted, this type of argument is very rarely sustained. *Id.* at 516-17. Indeed, it makes sound policy sense to preclude entities who have embraced the corporate form to secure its advantages from being allowed to disregard the existence of that structure when it is to their benefit to do so. *See Dep't of Transp. v. Airlie Park, Inc.*, 576 S.E.2d 341, 345 (N.C. Ct. App. 2003).

Here, ADM Milling asks the Court to overlook one of the primary benefits of the parent-subsidiary structure, namely the legal separation that it creates between entities. To determine

7

the outcome of this issue, the Court need only consider what would have occurred if Jesus Torres had named Archer Daniels Midland as a defendant in this case. Presumably, the corporation would have invoked the "general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (quoting William O. Douglas & Carroll M. Shanks, *Insulation from Liability Through Subsidiary Corporations*, 39 Yale L.J. 193 (1929)). Just as Archer Daniels Midland and ADM Milling cannot be considered the same entity for purposes of apportioning liability, the Court will not treat them as a single corporate unit in this instance. *See Health Mgmt. Assocs., Inc.*, 715 S.E.2d at 518 (holding that parent corporation's provision of insurance to wholly owned subsidiary did not constitute "self-insurance" because the two companies were "separate and distinct entities").

If it is difficult to discern how Archer Daniels Midland and ADM Milling could be treated as coextensive for purposes of the Court's analysis, the argument becomes even more attenuated as applied to Agrinational, where yet another layer of legal separation exists between the two companies. ADM Milling is a separate entity from Archer Daniels Midland, which in turn is wholly distinct from Agrinational. It is undisputed that the entirety of the Torres settlement amount was paid not by Archer Daniels Midland or ADM Milling, but by Agrinational. Thus, the real party in interest on these claims is Agrinational.

By the terms of Rule 17(a)(3), the Court typically does not have the authority to "dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."[5] For this reason, under the current circumstances, the Court would ordinarily

---

[5] Under North Carolina law, the same rule applies. *Land*, 563 S.E.2d at 11 ("When a case is not brought in the name of the real party in interest 'the court should refuse to deal with the merits of the case until the absent parties are

8

stay this case to allow Agrinational a reasonable time to join this action or assign its interest in the case to ADM Milling.

Here, however, it appears that Agrinational is not eligible to bring these claims under North Carolina law because it has failed to procure the necessary license. (N.C. Dep't of Insurance Database Search Results, Doc. No. 67-7) Section 58-28-15 of the North Carolina General Statutes provides that "no company transacting insurance business in this State without a license shall be permitted to maintain an action at law or in equity in any court of this State to enforce any right, claim or demand arising out of the transaction of such business until such company shall have obtained a license." N.C. Gen. Stat. § 58-28-15; *see Health Mgmt. Assocs., Inc.*, 715 S.E.2d at 518. The same provision also precludes unlicensed insurers conducting business in the state from assigning their claims to others—which means that Agrinational cannot assign its claims to ADM Milling. N.C. Gen. Stat. § 58-28-15. Thus, it would be futile to stay this case in order to afford Agrinational an opportunity to participate.

Because it appears to the Court that there is no basis to find that ADM Milling has a legal right to collect the $135,000 that Agrinational paid to settle Torres's claims, and because Agrinational is barred by North Carolina law from participating in this suit, CICA's Motion for Summary Judgment on ADM Milling's breach of contract claim will be granted. For the same reasons, Builders Mutual's Motion for Summary Judgment on ADM's breach of contract, declaratory judgment, and bad faith breach of contract claims will also be granted.[6]

---

brought into the action,' . . . . to avoid 'needless delay and technical disposition of a meritorious action.'" (citations omitted)).

[6] There is substantial overlap between several doctrines that affect a plaintiff's ability to recover in federal court. It is not always clear whether a plaintiff's relationship to its claims is best challenged as a problem of the real party in interest, under Fed. R. Civ. P. 17, capacity to sue, under Fed. R. Civ. P. 9, or Article III standing. 6A Fed. Prac. & Proc. Civ. § 1542 (3d ed.); *see also Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 283-88 (2008) (citing historical development of real party in interest doctrine as support for finding Article III standing). However, the parties in this case have only raised the question of whether ADM Milling is the real party in interest.

9

### B. Unfair or Deceptive Trade Practices

The remaining claim before the Court, then, is ADM Milling's claim against Builders Mutual for violations of North Carolina's Unfair or Deceptive Trade Practices Act. According to Builders Mutual, ADM Milling is the real party in interest on this claim, but has suffered no harm from Builders Mutual's refusal to pay the settlement amount. (Builders Mutual Memorandum in Support at 13-14, Doc. No. 68) Because actual injury is a necessary element of ADM Milling's claim, Builders Mutual argues that summary judgment is warranted on this count. (*Id.* at 14-15)

Under North Carolina law, an unfair or deceptive trade practices claim has three elements: (1) the defendant committed an unfair or deceptive act or practice, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or its business. *Birtha v. Stonemor*, LLC, 727 S.E.2d 1, 10 (N.C. Ct. App. 2012) (quoting *Walker v. Sloan*, 529 S.E.2d 236, 243 (N.C. Ct. App. 2000)); *see* N.C. Gen. Stat. § 75-1.1. A trade practice is unfair if it offends established public policy, causes substantial injury to consumers, or if it is immoral, unethical, oppressive, or unscrupulous. *Walker*, 529 S.E.2d at 243 (citation omitted). A practice is deceptive if it "possess[es] the tendency or capacity to mislead, or create[s] the likelihood of deception." *Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 164 (4th Cir. 2012) (emphasis omitted) (quoting *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond*, 80 F.3d 895, 903 (4th Cir. 1996)). Conduct need not be both unfair and deceptive to be within the scope of the statute, and the defendant's good faith and intent are relevant to the courts' analysis. *Id.*

A plaintiff typically states a claim for unfair or deceptive trade practices by showing both a breach of a contract and "substantial aggravating circumstances." *See Birtha*, 727 S.E.2d at 10; *Suntrust Bank v. Bryant/Sutphin Properties, LLC*, 732 S.E.2d 594, 599 (N.C. Ct. App. 2012).

Additionally when an insurance company engages in a practice or act constituting an unfair claim settlement practice under § 58-63-15(11) of the North Carolina General Statutes, it also violates the Unfair or Deceptive Trade Practices Act. *Guessford v. Pa. Nat. Mut. Cas. Ins. Co.*, 918 F. Supp. 2d 453, 463 (M.D.N.C. 2013) (citing *Gray v. N.C. Ins. Underwriting Ass'n*, 529 S.E.2d 676, 683 (N.C. 2000)).

Here, ADM Milling has failed to make out the third element of its unfair or deceptive trade practices claim. Although it claims to have suffered harm in the form of the $135,000 settlement paid to Torres, that injury was suffered by Agrinational. Moreover, ADM Milling has made no attempt to proffer any other type of injury or damage caused by Builders Mutual's conduct. Because ADM Milling has failed to establish a necessary element of a claim under North Carolina's Unfair or Deceptive Trade Practices Act, Builders Mutual's Motion for Summary Judgment on this count will be granted.

## IV. CONCLUSION

The Court finds that ADM Milling is not the real party in interest on its claim against CICA for breach of contract, or on its claims against Builders Mutual for breach of contract, declaratory judgment, and bad faith breach of contract. Because the real party in interest for these claims, Agrinational, is barred from bringing suit under North Carolina law, summary judgment will be granted on these counts. Additionally, the Court finds that ADM Milling's remaining claim against Builders Mutual for unfair or deceptive trade practices is insufficient because ADM Milling has failed to establish a necessary element, namely actual harm. Accordingly, Builders Mutual's Motion for Summary Judgment as to this claim will also be granted.

## V. ORDER

**IT IS THEREFORE ORDERED THAT**

(1) CICA's Motion for Summary Judgment be **GRANTED;**

(2) Builders Mutual's Motion for Summary Judgment be **GRANTED;** and

(3) ADM Milling's Motion for Summary Judgment be **DENIED.**

**SO ORDERED.**

Signed: February 4, 2016

Graham C. Mullen
United States District Judge